Hattie WAYNE, Plaintiff,

v.

**THE DALLAS MORNING NEWS and A.H. Belo Corporation, et al., Defendants.**

CIV.A.No. 3–98–CV–0711–L.

United States District Court, N.D. Texas, Dallas Division.

Nov. 24, 1999.

---

Doris R. Piper, B.J. Warren, Dallas, TX, for plaintiff.

Robert E. Sheeder, Craig J. Ackermann, Jenkins & Gilchrist, Dallas, TX, for defendants.

1. Many of the facts stated herein are undisputed by the parties or are taken directly from Wayne's own testimony as included in Defen-

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court are Defendants A.H. Belo, Chuck Gerardi, and Brenda Cureton–Smith's Motion for Summary Judgment, filed April 16, 1999, Plaintiff's Cross-motion to the Motion for Summary Judgment of Defendants A.H. Belo, Chuck Gerardi and Brenda Cureton–Smith, filed May 6, 1999, Defendant The Dallas Morning News' Motion for Summary Judgment, filed May 25, 1999. Defendant A.H. Belo Corporation's Motion to Strike Plaintiff's Summary Judgment Evidence, filed May 25, 1999, Defendants Dallas Morning News' and A.H. Belo Corporation's Motion to Strike Plaintiff's Summary Judgment Evidence, filed September 7, 1999, Plaintiff's Cross-motion to Defendants Dallas Morning News' and A.H. Belo Corporation's Motion to Strike Plaintiff's Summary Judgment Evidence, filed September 27, 1999, and Defendants The Dallas Morning News and A.H. Belo Corporation's Motion for Leave to Supplement their Summary Judgment Evidence, filed October 12, 1999. Upon careful consideration of the motions, responses, replies, the record evidence, and the applicable law, the court **grants** A.H. Belo Corporation and The Dallas Morning News' Motions for Summary Judgment, and **denies** Wayne's Cross-motion for Summary Judgment. Chuck Gerardi and Brenda Cureton–Smith's Motions for Summary Judgment are **denied as moot.**

## I. *Factual and Procedural Background*

Plaintiff Hattie Wayne ("Wayne") is an African–American female currently employed by Defendant The Dallas Morning News (the "Morning News") as an Account Executive for Parade Magazine.[1] While

dants' respective summary judgment appendices. On page 1 of Plaintiff's Brief in Support of Response and Cross-motion for Summary

the parties agree that Wayne is employed by the Morning News, Wayne further maintains that she is also an employee of Defendant A.H. Belo Corporation ("Belo"). The Morning News publishes *The Dallas Morning News* newspaper, and, prior to March 30, 1999, was an independent subsidiary of Belo.[2] Belo owns and operates television stations and other media enterprises in Texas, including WFAA–TV in Dallas. The Morning News and Belo maintain separate human resources departments. Defendant Chuck Gerardi ("Gerardi") is employed as the Director of Retail Advertising Sales for the Morning News. Defendant Brenda Cureton–Smith ("Cureton–Smith") is employed as a Retail Group Manager at the Morning News. Cureton–Smith reports to Gerardi.

Wayne became employed by the Morning News on December 6, 1977, after leaving a position she held at WFAA–TV. She began her career with the Morning News in the classified advertising department. On December 15, 1980, Wayne was promoted to the position of junior sales representative in outside sales in the Retail Advertising Department. Wayne was promoted again in June 1981, to sales representative. As a sales representative Wayne was assigned to the Oak Cliff territory. Wayne worked as a sales representative in the Oak Cliff territory until 1986, when she was moved to a new territory encompassing Downtown Dallas, McKinney Avenue, Lakewood, and Deep Ellum. On May 23, 1988, Wayne was promoted to a senior sales representative position, and in 1990 Wayne was moved into the "vertical" category of restaurants. Wayne continued to work in the restaurant category throughout the early 1990's.

In May, 1996, the Morning News hired Cureton–Smith as an Assistant Retail Manager. Cureton–Smith is an African–American female. In January 1997, Gerardi assumed the position of Director of Retail Advertising Sales for the Morning News. Also in January 1997, Cureton–Smith became Wayne's manager. Wayne believes that Cureton–Smith "harassed" her at the direction of Morning News management. According to Wayne, Cureton–Smith (i) stated in September 1996 she was brought in by the Morning News to "get rid of troublemakers"; (ii) gave Wayne an unfavorable performance review in 1997; and (iii) got angry when going on sales calls with her.

On November 5, 1996, Wayne filed her first charge of discrimination with the EEOC, alleging that the Morning News discriminated against her on account of her race by assigning higher revenue generating restaurant accounts to white sales representatives. Wayne filed a second charge of discrimination on November 22, 1996, alleging that she had been denied a promotion to Assistant Retail Manager in March 1996 due to her race, and in retaliation for complaints she had made concerning unlawful acts. On January 28, 1997, Wayne filed a third charge of discrimination against the Morning News. In the third charge, Wayne complained of race discrimination and retaliation with respect to account assignments, account transfers, and promotions.[3]

Judgment ("Plaintiff's Brief"), filed May 6, 1999, Wayne states that "Plaintiff's decision not to oppose certain issues raised by the Defendants' Motion for Summary Judgment should not be construed as an acquiescence in the validity of any factual assertions proffered therein." Wayne seems to say that Defendants' version of the facts is contested and not necessarily correct; however, Wayne has made no effort, in most instances, to set forth evidence showing which facts are in dispute. Wayne's conclusory statement alone does not sufficiently raise a factual dispute concerning the record evidence cited to by Defendants. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996); *Hightower v. Texas Hosp. Ass'n.* 65 F.3d 443, 447 (5th Cir.1995). Wherever the facts presented herein have been properly disputed by Wayne, they are taken in the light most favorable to her as the non-movant.

2. On March 30, 1999, the Morning News was restructured and became The Dallas Morning News, L.P.

By early April 1997, the restaurant category was experiencing disappointing results. Gerardi and Cureton–Smith asked Wayne to meet with them to discuss strategies for improving sales in her category. On April 18, 1997, Cureton–Smith informed Wayne that they would be meeting with Gerardi that day to discuss restaurant strategies. Wayne contends that Cureton–Smith harassed her by "publicly and loudly" stating, "we need to get together, your numbers are down." Wayne admits that at that point in time, her numbers were down.

On April 18, 1997, Wayne met with Gerardi and Cureton–Smith. Wayne and Gerardi got into an argument regarding past proposals Wayne had prepared. Gerardi told Wayne, "I don't give a shit what you've done a long time ago. You need to remember I am your boss." Wayne responded that she "did give a shit" because of her long history with the Morning News and her efforts over the years with respect to the restaurant category and the company as a whole. Wayne also accused Gerardi of having a "Klan mentality" and said that his behavior was "reminiscent of pre-civil rights America." [4] Wayne later complained to upper management regarding Gerardi's conduct at the meeting.

On April 28, 1997, Gerardi apologized to Wayne for his conduct at the April 18th meeting and explained that he did not mean to offend her. Wayne does not recall that Gerardi ever used abusive language toward her on any other occasion. Despite their earlier disagreement, Wayne prepared a written proposal for restaurant sales strategies in May 1997. Gerardi was pleased with the proposal and instructed Wayne to implement the ideas outlined in her proposal. Wayne refused to implement the proposal unless she was given a managerial position. After Gerardi informed Wayne that he did not intend to create a managerial position to implement her proposal, Wayne refused to carry out her ideas.

On June 12, 1997, Wayne was reassigned to sell advertising for Parade Magazine, an advertising supplement that is published on Sundays. The decision to reassign Wayne was based on her refusal to implement her strategic plan for the restaurant category. Wayne's new assignment caused no change in her salary, seniority, or fringe benefits. Although Wayne viewed the transfer to Parade Magazine as a demotion, Sergio Salinas, the Morning News' Vice President of Advertising, characterized it as a lateral move. In her assignment with Parade Magazine, Wayne is not restricted to selling advertising exclusively for Parade, and has sold advertisements for other sections of the Morning News. Wayne filed her fourth charge of discrimination on June 25, 1997, alleging that the Morning News declined to promote her, gave her a 2.7% salary increase, and reassigned her to Parade Magazine on account of her race. The June 1997 charge further alleges that these actions were taken by the Morning News in retaliation for one of her earlier EEOC charges.

Wayne received her right-to-sue letter on December 16, 1997, and filed this lawsuit, alleging race discrimination, retaliation, and conspiracy in violation of several

**3.** Wayne's third charge also contained a "Class Allegation" stating that "Black employees at all levels in the Retail Advertising Department are discriminated against as a class in terms of account and territorial assignment resulting in a discrepancy between Black and White employees." Appendix to Defendants A.H. Belo, Chuck Gerardi, and Brenda Cureton–Smith's Motion for Summary Judgment ("Defendants' App.") at p. 144. Although Wayne made this allegation in her third EEOC charge, she has not pleaded class action claims in this lawsuit. *See* Plaintiff's First Amended Complaint ("Complaint").

**4.** Wayne later clarified this remark at her deposition, stating her opinion that Gerardi's use of profanity was "the mentality of the masters talking to black people." Defendants' App. at p. 78.

federal statutes, and intentional infliction of emotional distress on March 16, 1998. Defendants now move for summary judgment on all of Wayne's claims.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas*, 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527,

1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support Plaintiff's opposition to Defendants' motion. *Id., Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. *Defendants A.H. Belo, Chuck Gerardi and Brenda Cureton– Smith's Motion for Summary Judgment*

Wayne has brought claims against Gerardi and Cureton–Smith for alleged violations of 42 U.S.C. §§ 1981 & 1985(3), as well as a state law claim for intentional infliction of emotional distress. In her response to Gerardi and Cureton–Smith's motion for summary judgment, Wayne does not oppose the dismissal of all claims against Gerardi and Cureton–Smith.[5] Accordingly, Wayne's claims against Gerardi and Cureton–Smith are hereby dismissed with prejudice, and the court will not analyze the merits Gerardi and Cureton–

---

**5.** Plaintiff's Response and Cross-motion to the Motion For Summary Judgment of Defendants A.H. Belo, Chuck Gerardi, and Brenda

Cureton–Smith ("Plaintiff's Response") at p. 1.

Smith's motion for summary judgment because it is moot.

With respect to Belo, Wayne alleges that she is pursuing claims against Belo under 42 U.S.C. § 1981, Title VII, and for intentional infliction of emotional distress.[6] Belo moves for summary judgment on all of Wayne's claims.

### A. *42 U.S.C. § 1981*

■ To establish a section 1981 claim, Wayne must show that (1) she is a member of a racial minority; (2) Belo had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Bellows v. Amoco Oil Co.,* 118 F.3d 268, 274 (5th Cir.1997).[7] It is undisputed that Wayne belongs to a racial minority group, thus satisfying the first element of this claim. Wayne has pleaded a claim against Belo under section 1981 based upon an alleged "employment contract"[8]. The parties agree that Wayne is an "at-will" employee under Texas law. Because employees at will have a contractual relationship with their employers for purposes of section 1981, *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.,* 160 F.3d 1048, 1050–51 (5th Cir.1998), the court must determine whether Wayne is a Belo employee.

Belo maintains that it has never been Wayne's employer because she was hired by the Morning News and not Belo when she left her job at WFAA–TV in 1977. It is undisputed that Wayne has been continuously employed by the Morning News since that time. Belo argues that Wayne's employment relationship with the Morning News, a Belo subsidiary, does not establish an employment relationship with Belo as well. In response, Wayne contends that the Morning News and Belo are a "single employer" and thus are both potentially liable to her for discrimination.

■ Whether two enterprises are a single employer under the Civil Rights Act of 1991 depends upon the presence of evidence showing (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Garcia v. Elf Atochem North America,* 28 F.3d 446, 450 (5th Cir.1994), *abrogated on other grounds, Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Trevino v. Celanese Corp.,* 701 F.2d 397, 403–04 (5th Cir.1983). That one company is a wholly-owned subsidiary of another is insufficient to establish that they are a single employer. *Garcia,* 28 F.3d at 450. The "highest importance" is placed on the second factor, which focuses on "what entity made the final decisions regarding employment matters related to the person claiming discrimination." *Chaiffetz v. Robertson Research Holding, Ltd.,* 798 F.2d 731, 735 (5th Cir.1986), *quoting Trevino,* 701 F.2d at 404, and *Odriozola v. Superior Cosmetic Distributors, Inc.,* 531 F.Supp. 1070, 1076 (D.P.R.1982).

■ In support of her argument that the Morning News and Belo are a single employer. Wayne has identified the following summary judgment evidence: a Statement of Business Conduct for the A.H. Belo Corporation that was produced by the Morning News in response to her

---

6. Supplement to Plaintiff's Response and Cross-motion to the Motion for Summary Judgment of Defendants A.H. Belo, Chuck Gerardi, and Brenda Cureton–Smith ("Plaintiff's Supplemental Response") at p. 1.

7. The activities protected by section 1981 are "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

8. Wayne states that "Plaintiff's differential terms and conditions of the employment contract were caused by Defendants' racially motivated and discriminatory treatment of her as a dark brown-skinned black woman, and was therefore, in violation of Section 1981." Complaint at p. 12.

discovery requests, a document entitled "Belo Notes" that refers to "the interdependent relationship between the corporate team in Dallas and each operating company...", a copy of her paycheck stub, which bears the names A.H. Belo Corporation and Belo Management Services, Inc., excerpts from a catalog purportedly entitled "Building on Tradition", which lists her as a "Belo employee," and her own affidavit testimony that she is an employee of Belo.

The record in this case demonstrates that with respect to the first factor listed above, the operations of the Morning News and Belo are not interrelated. At all times relevant to this case, the Morning News has been a separate and independent subsidiary of Belo.[9] The Morning News and Belo have separate boards of directors and human resources departments, and the records of Belo's human resources department do not show that Wayne has ever been employed by Belo. Wayne's summary judgment evidence is too vague to establish interrelationship of operations as required by this element of the test, and moreover, Wayne testified in her deposition that she does not know whether Belo is a separate corporation from the Morning News.

The second factor involved in the single employer test asks whether the two entities have centralized control of labor relations, focusing in particular on the question of what entity made the final decisions regarding the plaintiff's employment. Here, it is undisputed that the Morning News and Belo have separate human resources departments. Wayne has alleged no specific acts of discrimination by Belo, and all of her EEOC charges complain of actions taken against her by the Morning News. Wayne further testified in her deposition that her claims against Belo are

based solely upon the actions of the Morning News. The record also clearly reflects that all of the employment decisions relevant to this case were made by the Morning News; thus, this factor weighs heavily against finding that the Morning News and Belo are a single employer.

The next factor, common management, also does not help Wayne to establish that the Morning News and Belo are a single employer. As is discussed above, the record shows that the two entities have separate boards of directors and corporate officers. Wayne has offered no evidence to controvert this fact. Further, Belo's vague mention of its interrelationship with its operating subsidiaries does not raise a fact issue concerning commonality of management between the two companies. This factor also weighs against finding that the Morning News and Belo are a single employer.

The last factor to be considered is common ownership or financial control. It is undisputed that Belo is the parent company of the Morning News, thus this factor favors a finding that they are the same employer. This factor alone, however, is insufficient to support such a finding. *See Garcia*, 28 F.3d at 450 (fact that employee worked for wholly-owned subsidiary of parent not enough to establish that parent was employee's employer).

When the above factors are considered, it is clear that Wayne has failed to adduce a fact issue whether Belo is her employer. The undisputed record evidence shows that the Morning News and Belo are separate companies, and Wayne admitted in her deposition that she does not know whether the Morning News and Belo are legally separate entities. Wayne cannot controvert this evidence with her subsequent affidavit testimony that she has been an employee of Belo since 1977.[10] Further-

9. Affidavit of Jeff Lamb, Defendants' App. at p. 166.

10. Appendix to Plaintiff's Response and Cross-motion for Summary Judgment of Defendants A.H. Belo, Chuck Gerardi, and Bren-

da Cureton–Smith ("Plaintiff's App.") at p. 15, ¶ 3. Because this testimony is inconsistent with her earlier deposition testimony, the court has disregarded this portion of Wayne's affidavit because it is not proper summary

more, Wayne's evidence presented through "Belo Notes." "Building on Tradition," and her April 1999 paycheck stub is simply too vague and conclusory to raise a fact issue in light of the uncontroverted evidence presented by Belo, which shows that it is a separate entity from the Morning News, with separate management and human resources departments. The court finds that Belo is not Wayne's employer. Therefore, Wayne does not have a contract with Belo by virtue of an employer-employee relationship, and her section 1981 claim against Belo necessarily fails. Belo is entitled to judgment as a matter of law on this claim.

### B. *Title VII*

Title VII prohibits an employer from discriminating against individuals with respect to the terms and conditions of their employment due to race, color, sex, religion, or national origin. 42 U.S.C. § 2000e–2(a)(1). An employment relationship is thus a prerequisite to a Title VII claim. *See Garcia*, 28 F.3d at 450. The court has determined above that Belo is not Wayne's employer; therefore, Belo is entitled to summary judgment on Wayne's Title VII claim.

### C. *Intentional Infliction of Emotional Distress*

▮▮▮▮ Wayne admits that this claim against Belo is based solely upon actions taken against her by the Morning News,

based on her assumption that Belo and the Morning News are the same entity. Under Texas law, a parent corporation is generally not liable for the tortious acts of its subsidiary. *Lubrizol Corp. v. Cardinal Const. Co.*, 868 F.2d 767, 771 (5th Cir. 1989); *Lucas v. Texas Industries, Inc.*, 696 S.W.2d 372, 374 (Tex.1984); *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 739 (Tex.App.—Houston [14th Dist.] 1998, no pet. h.).[11] Even if the court assumes that Wayne has a valid cause of action against the Morning News, Belo cannot be held liable for the Morning News' tortious conduct, Belo is entitled to summary judgment on this claim. Also, for the reasons set forth in section IV.D., pages 26–27, Belo cannot be liable to Wayne for intentional infliction of emotional distress.

### IV. *Defendant The Dallas Morning News' Motion for Summary Judgment*

Wayne has asserted claims against the Morning News for race discrimination and retaliation in violation of Title VII, race discrimination in violation of 42 U.S.C. § 1981, and intentional infliction of emotional distress. The Morning News moves for summary judgment on all of Wayne's claims.[12]

### A. *Race Discrimination*

Wayne takes the position that the Morning News has discriminated against her

---

judgment proof. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir.1996).

11. An exception to this rule may be established, and the corporate fiction between parent and subsidiary disregarded, (1) when the fiction is used as a means of perpetrating fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation; (4) where the corporate fiction is employed to achieve or perpetrate a monopoly; (5) where the corporate fiction is used to circumvent a statute; or (6) where the corporate fiction is relied upon to justify wrong. *Seminole Pipeline*, 979 S.W.2d at 739. Wayne has not

argued for or attempted to set forth evidence establishing any of these exceptions; therefore, the court sees no reason to disregard the corporate fiction between the Morning News and Belo in this case.

12. After Wayne raised her contention that the Morning News and Belo are a single employer, Belo sought, and was granted, leave to join the Morning News in its Motion for Summary Judgment. Because the court has determined that Wayne's claims against Belo should be dismissed, it will not review the arguments advanced by Belo through the Morning News' summary judgment motion. Accordingly, with respect to Belo, the Morning News' Motion for Summary Judgment is denied as moot.

based on her race with respect to promotional opportunities and account assignments, in violation of both Title VII and 42 U.S.C. § 1981.[13] In response, the Morning News contends that (1) the majority of Wayne's race discrimination claims are time-barred; (2) Wayne is unable to establish a fact issue with respect to her disparate treatment claims; and (3) she also cannot raise a fact issue with respect to her disparate impact claims.

### 1. *Limitations Issues*

 A Title VII plaintiff in Texas must file a charge of discrimination within 300 days of learning of the conduct alleged. 42 U.S.C. § 2000e–5(e)(1); *Huckabay v. Moore,* 142 F.3d 233, 238 (5th Cir.1998); *Messer v. Meno,* 130 F.3d 130, 134 & n. 2 (5th Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999). Under section 1981, a claimant must bring suit within two years of the alleged unlawful act. *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 533 n. 10 (5th Cir.1996). The plaintiff's claim accrues when he or she knows or reasonably should know that the discriminatory act has occurred. *Merrill v. Southern Methodist University,* 806 F.2d 600, 605 (5th Cir.1986); *Henderson v. AT & T Corp.,* 933 F.Supp. 1326, 1333 (S.D.Tex.1996).

In support of her race discrimination claim, Wayne alleges that the Morning News failed to promote her in 1978, delayed her promotion to Senior Salesperson until 1988, and failed to award her an Assistant Retail Manager position in 1994. She further alleges that the Morning News discriminated against her with respect to account assignments by failing to timely assign her a sales territory in 1981, assigning her to the Oak Cliff territory from

1981 to 1986, while white sales representatives were typically transferred out of that territory after one year, and by not assigning her all "call-in" accounts in the restaurant category beginning in 1990.

Wayne filed her first EEOC charge on November 5, 1996. The Morning News moves for summary judgment with respect to each of these claims on the ground that all of the above events occurred outside of the 300–day period preceding that date, and are thus barred by the applicable statute of limitations. The Morning News further argues that these section 1981 claims are also barred by limitations because those alleged unlawful acts occurred more than two years prior to her filing of this lawsuit in 1998.

 In response, Wayne argues that these claims are not barred by limitations because they are part of a continuing violation by the Morning News. The continuing violation theory relieves a plaintiff of showing that all of the complained-of acts fall within the limitations period where a series of related acts can be shown, one or more of which falls within the limitations period. *Huckabay,* 142 F.3d at 238; *Messer,* 130 F.2d at 134–35. A plaintiff who pursues a continuing violation theory must demonstrate more than a series of discriminatory acts. *Huckabay,* 142 F.3d at 239. She must show an organized scheme leading to a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the claim. *Id., Messer,* 130 F.3d at 135; *Glass v. Petro-Tex Chemical Corp.,* 757 F.2d 1554, 1561 (5th Cir.1985). Several factors may be involved in evaluating a continuing viola-

---

**13.** In her deposition, Wayne testified that the Morning News also discriminated against her by creating new managerial positions for white employees but not for black employees, not conducting her performance reviews objectively and on an annual basis, and subjecting her to a different bonus plan than other employees in her department. Morning News App. at pp. 387, 393–97, and 400–01. The

Morning News has moved for summary judgment on these disparate treatment claims. Wayne has not briefed these issues in her response or cited to any summary judgment evidence supporting these claims. Wayne has therefore abandoned them, and the court will grant summary judgment for the Morning News on these claims. *See Scales v. Slater,* 181 F.3d 703, 709 n. 5 (5th Cir.1999).

tion claim, including (1) whether the alleged acts involve the same type of discrimination; (2) frequency of the acts, meaning whether they are recurring or "more in the nature of an isolated work assignment or employment decision"; and (3) whether the act has a degree of permanence that should trigger the employee's awareness of the need to assert her rights. *Huckabay*, 142 F.3d at 239.

◼ In this case, Wayne's stale discrimination claims each involve discrete events often spaced several years apart. In *Huckabay*, the Fifth Circuit held that the plaintiff's demotion and failure to promote claims were unrelated to his hostile working environment claims, upon which he argued a continuing violation had occurred. Declining to apply the continuing violation theory to the plaintiffs demotion and failure to promote claims, the court noted that these claims were "discrete and salient events" that should have put the plaintiff on notice that a cause of action had accrued. Furthermore, the court noted that they did not constitute the same type of behavior complained of in his harassment claims. *Id.* at 240. Similarly, Wayne's claims with respect to the promotion opportunities and account assignments outlined above were not day-to-day occurrences which formed a continuing and related pattern of conduct. Accordingly, the continuing violation theory does not apply to these claims, and they are barred by the applicable statute of limitations, 42 U.S.C. § 2000e–5(e)(1). The Morning News is entitled to summary judgment on these claims.

### 2. *Discrimination Regarding Promotions*

Wayne contends that because of her race, the Morning News discriminated against her by failing to promote her in 1996 and 1997.[14] When they are urged as

parallel causes of ·action, the same standard of proof applies to Wayne's disparate treatment claims under both Title VII and 42 U.S.C. § 1981. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n. 2 (5th Cir.1999); *Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir.1998). For this reason, Wayne's Title VII and section 1981 race discrimination claims will be analyzed together.

Wayne has presented no direct evidence of discrimination; therefore, the court will examine Wayne's race discrimination claim under the well-established burden-shifting analysis articulated in *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* analysis first requires Wayne to establish a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817. If she successfully does so, the burden then shifts to the Morning News to explain the circumstantial evidence of discrimination by articulating a legitimate, non-discriminatory reason for its actions. *Id.; Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the Morning News carries this burden, Wayne then must demonstrate that the Morning News' articulated rational is pretextual, and that the real reason for its decision was an intent to discriminate against her. *Id.; St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Under the first part of this analysis, Wayne is required to set out a prima facie case of discrimination. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir.1996). The elements of her prima facie case are that she (1) is a member of a protected class; (2) sought and was qualified for an available employment position; and (3) the position was given to someone outside the protected class.[15] *Id.; Grimes*

---

**14.** Wayne also alleges that she was denied a promotion in 1994 as a result of discrimination. The court has determined that this claim is barred by limitations; therefore it

will not be addressed in the context of her race discrimination claim.

**15.** The elements of a plaintiff's prima facie case may vary depending on the facts of the

*v. Texas Dep't of Mental Health and Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996).

It is undisputed that Wayne has met the first element of her prima facie case. As an African–American, she is a member of a minority group protected by Title VII and section 1981. Wayne claims that she sought the following positions: an Assistant Retail Manager position that was awarded to Cureton–Smith in 1996, an Assistant Retail Manager position awarded to Natalie Yancy ("Yancy") in 1997, the General Advertising Director position given to Doug Olson ("Olson") in 1997, a Group Manager position awarded to Mark Lamar ("Lamar") in 1997, and a Group Manager position given to David Menefee ("Menefee") in 1997. Olson, Lamar, and Menefee are all white males; therefore, Wayne has established the third element of her prima facie case regarding the promotions awarded to them. With respect to the promotions awarded to Cureton–Smith and Yancy, Wayne is unable to meet the third element of her prima facie case because both Cureton–Smith and Yancy are African–American females. These claims should be dismissed.[16]

To establish the second element of her prima facie case, Wayne must show that she sought and was qualified for the positions awarded to Olson, Lamar, and Menefee. The summary judgment record adequately shows that Wayne applied for these positions. Wayne fails, however, to show what the qualifications for these positions were and how her background and experience satisfied the applicable guide-

lines. Instead, Wayne relies solely on the fact that the positions were awarded to white males and a vague, conclusory assertion that her case "is also about the countless other promotional opportunities that were never made public and for which plaintiff was never given an opportunity to apply."[17] Wayne has failed to identify evidence raising a fact issue concerning the second element of her prima facie case; therefore, the Morning News is entitled to summary judgment on her remaining failure to promote claims.

### 3. *Discrimination in Assigning Accounts*

Wayne's second disparate treatment claim alleges that the Morning News discriminated against her based on race because it did not assign certain client accounts to her. To establish her prima facie case, she must show that (1) she belongs to a protected class of persons; (2) she suffered an adverse employment action; and (3) employees outside her protected class were treated differently under nearly identical circumstances. *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir.1995). It is clear that Wayne has satisfied the first element of her prima facie case as she is a member of a class protected by Title VII and section 1981.

To satisfy the "adverse employment action" prong of her prima facie case, Wayne must show that the Morning News took "ultimate employment action" against her. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 705–07 (5th Cir.), *cert. denied,* 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260

case and the nature of the claim. *LaPierre.,* 86 F.3d at 448 n. 3, *citing McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817.

**16.** Wayne has also pleaded a vague color discrimination claim based on her dark skin color as compared to Cureton–Smith and Cornelius Foote, another African–American manager at the Morning News, Complaint at pp. 10–11: Appendix to Defendant The Dallas Morning News' Motion for Summary Judgment ("Morning News App.") at pp. 156, 164. The Morning News has moved for sum-

mary judgment on this claim, and Wayne has not addressed her color claim in her response. The court thus presumes that Wayne has abandoned her color claim and does not oppose its dismissal. *See Scales,* 181 F.3d at 709 n. 5.

**17.** Plaintiff's Brief in Support of Partial Response to Defendants The Dallas Morning News and A.H. Belo Corporation's Motion for Summary Judgment ("Wayne Brief") at p. 14.

(1997). The Morning News argues that Wayne is unable to meet the second prong of her prima facie case because the actions she complains of are not ultimate employment actions that would invoke the protection of Title VII.

Title VII focuses on ultimate employment decisions such as hiring, firing, granting leave, discharging, promoting, and compensating. *Id.* at 707; *Dollis v. Rubin,* 77 F.3d 777, 782 (5th Cir.1995). The statute is not intended to address other employment-related decisions that may have some tangential effect on an ultimate employment decision but are not ultimate employment decisions in and of themselves. *Id.* The Fifth Circuit has provided numerous examples of employment actions which are not ultimate employment decisions within the purview of Title VII. In *Mattern,* the court held that hostility from fellow employees, having tools stolen, and the anxiety resulting therefrom were not ultimate employment decisions. 104 F.3d at 707. Denial of administrative complaints and internal grievances also do not meet the standard. *Dollis,* 77 F.3d at 782. Changing an employee's work schedule, hours, or increasing an employee's workload are merely administrative decisions and do not constitute the type of ultimate employment decisions contemplated by Title VII. *Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1457, 143 L.Ed.2d 543 (1999). Furthermore, while formal reprimands may be ultimate employment decisions, informal criticisms are not. *Id.*

The actions of the Morning News in assigning, or not assigning, certain accounts to Wayne are not, standing alone, ultimate employment decisions within the purview of Title VII. To the contrary, the court holds that account assignments are administrative decisions not properly characterized as "ultimate employment decisions." *See Benningfield,* 157 F.3d at 377. Therefore, Wayne's allegations and evidence showing that she was not assigned particular accounts will not, without more, permit her to survive summary judgment. The Morning News' actions with respect to account assignments could rise to the level of an ultimate employment decision if the assignment of accounts affected the compensation paid to its sales representatives. *Mattern,* 104 F.3d at 707; *Dollis,* 77 F.3d at 782. Wayne alleges that the Morning News habitually assigns black employees to "low revenue generating accounts which do not allow for substantive bonus opportunities enjoyed by white sales representatives assigned to more lucrative accounts."[18] Wayne supports this statement with her own testimony and that of one other black Morning News Employee. Wendy Jackson ("Jackson"). Both Wayne and Jackson attest to the above in a conclusory fashion, but Wayne presents no evidence of the economic impact the Morning News' account assignment decisions have had on her. For example, Wayne has presented no evidence of how the Morning News' sales representatives who handle large accounts are paid compared to those who handle smaller accounts. Wayne has failed to establish the second element of her prima facie case; therefore, the Morning News is entitled to judgment as a matter of law on this claim.

### 4. *Disparate Impact Claims*

◼ Wayne further alleges that the Morning News' policies and procedures regarding promotions and account assignments disparately impact African–Americans in violation of Title VII. A disparate impact claim arises when an employer's otherwise neutral policy has a "significantly disproportionate impact" on a protected class. 42 U.S.C. § 2000e–2(k)(1)(A)(i); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). To establish a prima facie case of disparate impact, a plaintiff must (1) identify the challenged employment practice or policy;

---

**18.** Wayne Brief at p. 8.

(2) demonstrate a disparate impact on a group that falls within the protective ambit of Title VII; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. *Gonzales v. City of New Braunfels*, 176 F.3d 834, 839 n. 26 (5th Cir.1999).

Other than alleging that the Morning News has habitually avoided assigning blacks to large accounts and has failed to promote them as compared to non-minorities, Wayne has failed to identify a particular policy or practice that disparately impacts African–Americans and thus has not satisfied the first element of her prima facie case. Wayne's disparate impact claim is, in actuality, more akin to a systemic disparate treatment claim because she alleges *intentional* discrimination, as opposed to a facially neutral policy or practice that has a disparate, yet unintended impact on a minority group. The summary judgment record does not contain a fact issue concerning Wayne's disparate impact claim, and for these reasons this claim should be dismissed.

### B. *Retaliation*

Wayne alleges that the Morning News retaliated against her on several occasions following the filing of her EEOC complaints and other complaints of unfair treatment by denying her a promotion to Assistant Retail Manager in February 1997, and reducing her compensation through a "slowdown" in the rate of increase of her base wages per two week period beginning in 1996. The Morning News has moved for summary judgment on Wayne's retaliation claims.[19]

■ To establish a prima facie case of retaliation. Wayne must show that (1) she engaged in protected activity; (2) the Morning News took adverse employment action against her; and (3) a causal connection exists between that protected activity and the adverse employment action. *Mattern*, 104 F.3d at 705; *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). The Fifth Circuit has stated that the ultimate issue in a retaliation case is whether the protected conduct was a "but for" cause of the adverse employment decision. *Long*, 88 F.3d at 305 n. 4, *citing McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir.1985). Even if an employee's protected conduct is a "substantial element" in the employer's decision to terminate an employee, no liability for retaliation will arise if the employer shows that it would have taken the same action irrespective of the employee's protected activity. *Id.*, *citing Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir.1984).

■ It is undisputed that Wayne engaged in protected activity, thus she has established the first element of her prima facie case. To establish the second prong of her retaliation claim, Wayne must show that the Morning News took an adverse "ultimate employment action" against her. *Mattern*, 104 F.3d at 709. Under Title VII, actions such as hiring, firing, granting leave, discharging, promoting, and compensating are considered ultimate employment decisions. *Id.* at 707; *Dollis*, 77 F.3d at 782. Here, Wayne has raised retaliation claims based on the Morning News' failure to promote her and a decline in the rate of increase in her salary. When Wayne's allegations are taken as true, these claims adequately meet the second prong of her retaliation claim. The Morn-

---

**19.** In its summary judgment motion, the Morning News has raised several other potential factual bases for Wayne's retaliation claim. *See* Defendants the Dallas Morning News and A.H. Belo's Brief in Support of their Motion for Summary Judgment ("Morning News' Brief") at p. 15. The only two retaliation claims discussed and briefed by Wayne in her supplemental response relate to the Morning News' failure to promote her to Assistant Retail Manager in February 1997 and the alleged "slowdown" in the rate of increase in her wages. Because Wayne has limited her response to these two claims, the court assumes she no longer intends to pursue any of her other retaliation claims. *See Scales*, 181 F.3d at 709 n. 5.

ing News argues that Wayne is unable to meet the third element of her prima facie case by producing evidence of a causal connection between her race discrimination complaints and EEOC charges and the Morning News' adverse employment decisions. The court agrees.

### 1. *Failure to Promote*

Wayne alleges that the Morning News' decision not to promote her to Assistant Retail Manager in February 1997 was made in retaliation for her EEOC charges against the Morning News alleging race discrimination. The Morning News requests summary judgment on this claim, arguing that Wayne has no evidence of a causal connection between her EEOC filings and the Morning News' decision to award the Assistant Retail Manager position to Natalie Yancy instead of her.

In support of this claim, Wayne contends that Yancy was not qualified for the Assistant Retail Manager position, and that it was given to Yancy in order to retaliate against her. Specifically, Wayne has shown that the position description states that applicants were required to have a minimum of three years managerial experience, and that Yancy only had two years of prior management experience.[20] This evidence does not establish a retaliatory motive for the Morning News' decision to promote Yancy instead of Wayne. It is undisputed that Wayne had no prior supervisory or management experience, and that her performance was poor in 1996. Wayne's only other evidence in support of this claim is her subjective belief that the Morning News decided to promote Yancy in order to retaliate against her.[21] While the Morning News' decision

to promote someone who did not have three years of managerial experience is inconsistent with its written position description,[22] there is no evidence in the record to suggest that it did so in retaliation against Wayne. There is no genuine issue of material fact present in the record with respect to this claim. The Morning News is entitled to judgment as a matter of law on Wayne's retaliation claim relating to the February 1997 promotional opportunity.

### 2. *Declining Rate of Salary Increases*

Wayne's second retaliation claim alleges that beginning "on or about 1996" her base pay increased at a slower rate than before, while some other employees in her department did not experience a similar decline, and thus her smaller salary increases are due to retaliation by the Morning News. In support of this claim, Wayne relies on an affidavit provided by her expert witness Dr. Herbert Burkman. The Morning News argues that it is entitled to summary judgment on this claim because it was raised for the first time in Wayne's supplement to her summary judgment response, never having been asserted in her EEOC charges, pleadings, interrogatory responses, or deposition.

It is well settled that a nonmovant cannot create a fact issue precluding summary judgment by raising allegations in an affidavit that contradict prior deposition testimony or interrogatory responses. *S.W.S. Erectors,* 72 F.3d at 495. The record also reflects that Wayne did not plead this claim either at the administrative stage or in her pleadings filed in this case. Furthermore, she was asked to list all of the Morning News' alleged acts of retaliation in both her interrogatory responses and

---

**20.** Supplement to Plaintiff's Partial Response to Defendants' Motion for Summary Judgment ("Wayne's Supplement") at Exh. 3.

**21.** Wayne's subjective belief that she was retaliated against will not permit her to avoid summary judgment. *See Waggoner v. City of Garland, Texas,* 987 F.2d 1160, 1164 (5th Cir. 1993).

**22.** Anti-discrimination laws are not intended to be vehicles for judicial second-guessing of employment decisions. *Walton v. Bisco Industries, Inc.,* 119 F.3d 368, 372 (5th Cir. 1997); *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 959 (5th Cir.1993).

her deposition. This claim was never mentioned. Therefore, it is not properly before the court and should be dismissed.

█ Even if the court were to assume this claim was properly pleaded, it should be dismissed for the additional reason that Wayne has not presented evidence raising a genuine fact issue regarding a causal connection between her "slowdown" in salary increases and her discrimination complaints. Wayne filed her first EEOC charge on November 5, 1996, and argues that the "suspicious timing" of her salary "slowdown" constitutes circumstantial evidence of retaliation. Her expert Dr. Burkman testified that she began experiencing a "slowdown" in her salary increases "beginning on or about 1996." This evidence is too vague to raise a fact issue whether the beginning of the "slowdown" coincides with Wayne's November 1996 EEOC charge. Wayne has failed to establish the third element of her prima facie case; thus, for this additional reason, Wayne's second retaliation claim must be dismissed.

## C. Conspiracy

█ The Morning News has moved for summary judgment on Wayne's conspiracy claim. Although the Morning News has moved for judgment as a matter of law on this claim, the court has reviewed Wayne's pleadings and finds that she simply has not pleaded a conspiracy claim against the Morning News. Wayne has not alleged, much less established, that the actions of the Morning News were based on some "racial, or perhaps otherwise, invidiously discriminatory animus." *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The conspiracy claim pleaded by Wayne reads, in relevant part, as follows:

> Section 1985(3) prohibits conspiracy, to violate Plaintiff's civil rights because of race-based discriminatory animus. The facts set out above indicate such an ani-

mus, pursuant to which Defendants CHUCK GERARDI and BRENDA CURETON–SMITH conspired to injure Plaintiff's person and deprive her of her Fourteenth Amendment privileges as a United States citizen to be free from racial discrimination.

Accordingly, Wayne has not pleaded a claim for conspiracy against the Morning News.[23] Because this claim has not been properly pleaded by Wayne, it is not before the court and will not be addressed by the court.

## D. Intentional Infliction of Emotional Distress

█ Wayne's final claim against the Morning News is a claim for intentional infliction of emotional distress under Texas law. To recover under this theory, Wayne must show that (1) the Morning News acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the Morning News' conduct caused her emotional distress; and (4) the emotional distress she suffered was severe. *Hirras v. Natl. R.R. Passenger Corp.*, 95 F.3d 396, 400 (5th Cir.1996); *Mattix–Hill v. Reck*, 923 S.W.2d 596, 597 (Tex.1996). "Only in the most unusual cases" is the employer's conduct extreme and outrageous enough to move outside the realm of an ordinary employment dispute. *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir.1994). In such cases, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hirras*, 95 F.3d at 400, *quoting Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). Mere insults, indignities, annoyances, petty oppression, or other trivialities do not give rise to an intentional infliction of emotional distress claim. *Johnson v. Merrell*

---

**23.** Wayne does not oppose dismissal of her claims against Gerardi and Cureton–Smith,

including the conspiracy claim.

*Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33 (5th Cir.1992).

 The factual bases Wayne has alleged in support of this claim are (1) Gerardi used profanity in a meeting with her; (2) she was transferred to Parade Magazine; and (3) she received small raises.[24] Wayne's transfer to Parade Magazine and the small raises she received are employment disputes that do not rise to the level of intentional infliction of emotional distress. The record shows that Gerardi swore at Wayne during a meeting, and later apologized for doing so. Gerardi has not used profanity with Wayne on any other occasion. This single incident where inappropriate and vulgar language was used will not sustain Wayne's intentional infliction of emotional distress claim; rather, it is the type of insult or indignity that is not actionable. *See Gazda v. Pioneer Chlor Alkali Co., Inc.*, 10 F.Supp.2d 656, 676–77 (S.D.Tex.1997) (granting summary judgment on intentional infliction claim); *Keller v. Roadway Express*, 1998 WL 133097 (N.D.Tex.1998) (same). The Morning News is entitled to summary judgment on this claim.

### V. Wayne's Cross-motion for Summary Judgment

Wayne has filed a cross-motion for summary judgment, requesting summary judgment on her claims against Belo. In light of the court's ruling on Belo's summary judgment motion, Wayne's Cross-motion for Summary Judgment is **denied.**

### VI. Motions to Strike Summary Judgment Evidence

The parties have filed several motions objecting to the summary judgment evidence submitted by both sides.[25] As is articulated above, the court has disregarded this evidence where necessary. The court has not found it necessary to rely on the remainder of the challenged evidence, or finds that it reaches the same result whether or not the evidence is considered. Therefore, the remaining portions of the motions to strike are **denied as moot.**

### VII. Defendants The Dallas Morning News and A.H. Belo Corporation's Motion for Leave to Supplement their Summary Judgment Evidence

The Morning News and Belo request the opportunity to supplement their summary judgment evidence "in the event the court grants Plaintiff's Cross-motion to Strike certain documents contained in Defendants' summary judgment evidence."[26] The court has denied Wayne's cross-motion to strike as moot; accordingly, The Dallas Morning News and A.H. Belo Corporation's Motion for Leave to Supplement their Summary Judgment Evidence is also **denied as moot.**

### VIII. Conclusion

For the reasons previously stated, there is no genuine issue of material fact with respect to any of Wayne's claims against Belo or The Dallas Morning News. Accordingly, Defendant A.H. Belo Corporation's Motion for Summary Judgment and Defendant The Dallas Morning News' Motion for Summary Judgment are both **granted,** and Wayne's claims against Belo and the Morning News are hereby dismissed with prejudice. By Wayne's consent, her claims against Chuck Gerardi

---

24. Morning News App. at pp. 380–81.

25. *See* Defendant A.H. Belo Corporation's Motion to Strike Plaintiff's Summary Judgment Evidence, filed May 25, 1999, Defendants Dallas Morning News' and A.H. Belo Corporation's Motion to Strike Plaintiff's Summary Judgment Evidence, filed September 7, 1999, and Plaintiff's Cross-motion to Defendants Dallas Morning News' and A.H.

Belo Corporation's Motion to Strike Plaintiff's Summary Judgment Evidence, filed September 27, 1999.

26. Defendants The Dallas Morning News and A.H. Belo Corporation's Motion for Leave to Supplement their Summary Judgment Evidence, at p. 1 n. 1.

and Brenda Cureton–Smith are also dismissed with prejudice. All other pending motions are hereby **denied as moot.** Judgment will be entered by separate document.