William WOODFOLK, Jr.,

v.

ORMET PRIMARY ALUMINUM CORPORATION.

Civil Action No. 99–77–D.

United States District Court, M.D. Louisiana.

Feb. 22, 2001.

Kathryn Wyble, Ieyoub & Wyble, L.L.C., Baton Rouge, LA, for plaintiff.

William R. D'Armond, Melanie Moreland Hartmann, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BRADY, District Judge.

Plaintiff, William Woodfolk, Jr. (Woodfolk), an African American male and a former employee of the defendant, Ormet Primary Aluminum Corp. (Ormet), brings this suit against Ormet alleging that his employment with that company was terminated because of his race and because he suffers from a protected disability, all in violation of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act; and the Louisiana Employment Discrimination Act, La. Rev.Stat. § 23:301–354.

Jurisdiction is based on those Federal Statutes and the Federal Supplemental Jurisdiction Statute, 28 U.S.C. § 1367. Ormet has filed a motion for summary

judgment contending that there is no genuine issue as to a material fact and it is entitled to judgment as a matter of law. This motion is opposed. There is no need for oral argument and for the reasons set forth, the court finds that the defendant's motion has merit and dismisses the plaintiff's claims.

## FACTS

Woodfolk was employed by Ormet from January 1989 until his discharge on June 25, 1997. Ormet operates an aluminum plant and a bulk marine terminal on contiguous land at Burnside, Louisiana. The plant converts bauxite into alumina, and the marine terminal handles the loading and unloading of marine vessels for the plant and others on a commercial basis. Woodfolk worked at the plant in various capacities and was a press cloth utility worker (PCU) at the time of his discharge. He was a member of a union and was covered by a union contract which afforded him certain arbitration and other rights in the event of discharge. His work as a PCU required manual labor and was physically demanding.

For many years prior to Woodfolk's discharge, Ormet had promulgated "Conduct and Working Rules" pursuant to the collective bargaining agreement with the union of which Woodfolk was a member. One of the provisions of these rules entitled "Intolerable Violations" prohibited an employee from sleeping during work hours at the plant. Employees caught violating this no-sleeping rule could be discharged from employment.[1] Apparently, for many years the company was lax in its enforcement of this provision. This changed in 1994 when Gregory Driscoll, Sr. was assigned by Ormet to assume primary responsibility for labor-relations matters. In

that capacity, Driscoll made it clear that the "No Sleeping Rule," among others, would be strictly enforced. He specifically told the company supervisors that they had no discretion as to the penalty for sleeping employees and that the guilty employee in all such instances was to be discharged. (See Driscoll Affidavit, pps. 3–4.) On the morning of June 17, 1997, Woodfolk was working the day shift as a PCU. Around 9:30 a.m., he was not at his assigned duty station and was found sleeping in the sewing/break room of the plant some three floors below his duty station. While the length of time he may have been sleeping is disputed, the fact that Woodfolk was sleeping is not. (See depositions of Mickey Chaney, p. 10, and William Woodfolk, Jr., pp. 48–49.) This sleeping incident was reported to the upper management of Ormet who, after confirming the evidence of Woodfolk's sleeping, discharged him for a violation of the "No Sleeping Rule" on June 24, 1997.

Gregory Driscoll, Sr., Ormet's Corporate Industrial Relations Director, made the decision to discharge Woodfolk after talking to witnesses about his sleeping and after consulting the plant's General Manager and Labor Relations Superintendent. (See deposition Bobby Boyle, p. 17.) Plaintiff's position at the plant was filled by an African American male. (See affidavit of Eva Ivey.) Thereafter, plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) contending he was dismissed from his employment because of his race and some months later amended this charge to include disability discrimination. (Woodfolk deposition, exhibit 6.) The EEOC found in part that "... the charge is unsupported by any direct or circum-

---

1. The rule reads "7. No employee shall sleep during his/her work hours on plant premises". The penalty for a violation of this rule is "five day suspension, subject to discharge."

See "Conduct and Working Rules Alumina Plant" attached to the affidavit of Gregory Driscoll, Sr.

stantial evidence of discrimination" and issued to Woodfolk a "right to sue letter." (See affidavit of Eva Ivey and attachments 3 and 4 thereto.)

Woodfolk also filed a grievance under his union contract, and the matter of his discharge went to arbitration. After a hearing, the arbitrator upheld the discharge finding no disparate treatment by Ormet towards Woodfolk in this matter. (See affidavit of Gregory Driscoll, attachment 2.)

On January 25, 1999, some eighteen months after his discharge, Woodfolk filed this lawsuit. It is the basic contention of the plaintiff that he was discharged for sleeping when white employees were not and that he suffers from a protected disability for which the defendant would not accommodate him. The court finds that the plaintiff cannot legally prevail on either theory.

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must explain the basis for its motion and show that "the evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998). To defeat a properly supported motion, the nonmovant must produce affidavits or other evidence establishing specific facts which demonstrate that there is a genuine issue for trial. *Id.*

## THE 42 U.S.C. § 1981 CLAIM AND THE STATE LAW DISABILITY CLAIM

Ormet asserts that plaintiff's claim under 42 U.S.C. § 1981 for race discrimination and his claim for disability discrimination under Louisiana law are prescribed and should be dismissed.

■ It has long been held that claims under § 1981 must be brought within the one-year period applicable to tort actions under Louisiana law. See *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); see also *Hughes v. Arveson*, 924 F.Supp. 735, 738 (M.D.La.1996).

Woodfolk was terminated by Ormet on June 25, 1997. The instant lawsuit was filed on January 25, 1999, or more than one year since the termination. This claim is therefore prescribed.

■ The Louisiana Civil Rights for Handicapped Persons Act (LCRHP) in effect at the time of Woodfolk's discharge has since been repealed. That statute contained a one-year statute of limitations. See La.Rev.Stat. § 46:2256 [repealed]. Effective on August 1, 1997, the substantive provisions of the LCRHP were recodified but did not provide a prescription period. However, both state and federal courts construing similar Louisiana employment discrimination statutes with no express prescriptive limitation have adopted and applied the one year prescriptive period of Article 3492 of the Louisiana Civil Code to such discrimination claims. See *Williams v. Conoco*, 860 F.2d 1306, 1307 (5th Cir.1988); see also *Arvie v. Century Tel. Enters., Inc.*, 452 So.2d 392, 393 (La.App. 3 Cir.1984).

Woodfolk's state law disability discrimination claim is of such a character as to fit the above cited prescriptive period and is therefore prescribed[2] and dismissed. The plaintiff's Title VII, ADA and state law race discrimination claims remain to be decided under the defendant's motion for summary judgment.

---

**2.** Plaintiff in his memorandum opposing the defendant's motion for summary judgment does not contest that these claims have prescribed.

## THE BURDEN OF PROOF ON THE TITLE VII, ADA AND STATE LAW RACE DISCRIMINATION CLAIMS

Both the plaintiff and the defendant agree on the standards this court must apply to this action. In the end, under those standards, the plaintiff must establish and prove that he was intentionally discriminated against in his discharge from employment. His belief that he was fired because of his race or disability will not carry the day. See *Grimes v. Texas Dep't of Mental Health and Retardation,* 102 F.3d 137, 139–40 (5th Cir.1996).

. The United States Supreme Court has mandated a three-prong test to determine the validity of claims of employment discrimination when, as here, the plaintiff has adduced no direct evidence of discrimination. See *E.E.O.C. v. Louisiana Office of Cmty. Servs.,* 47 F.3d 1438, 1443 (5th Cir. 1995). As both parties agree, the most recent pronouncement of this three-prong test is found in *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The prongs are as follows:

First, the plaintiff must establish a *prima facie* case. Second, if the plaintiff establishes the *prima facie* case, an inference of discrimination arises. Third, if the defendant sets forth a legitimate, non-discriminatory reason for its action, the inference of discrimination is no longer viable. See *id.* at 2106.

At this stage, the defendant is entitled to summary judgment unless the plaintiff can demonstrate by a preponderance of the evidence that the legitimate reasons put forward by the defendant were not the real reasons for the action it took, but were a pretext for the firing based on a discriminatory reason. The employer can legally discharge an employee for arbitrary reasons or for reasons that are based on erroneous facts or information, as long as it does not intentionally discriminate.

This court cannot substitute his view for those of the discharging employer. See *Deines v. Texas Dep't of Protective and Regulatory Servs.,* 164 F.3d 277, 280 (5th Cir.1999).

Under the facts presented by this case, Woodfolk must demonstrate in the race discrimination claims that he is a member of a protected class; that he was discharged; that he was qualified for the discharged position; and that he was replaced by someone outside the protected class. See *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In his disability claim he must show that: "(1) He is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees." See *Burch v. Coca–Cola Co.,* 119 F.3d 305, 320 (5th Cir.1997) (internal citation and quotation marks omitted), *cert. denied,* 522 U.S. 1084, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998).

If Woodfolk so demonstrates, then Ormet must come forward and announce a legitimate non-discriminatory reason for its discharging the plaintiff. If Ormet does come forward with such a reason, then summary judgment should be granted in Ormet's favor unless Woodfolk can come forward and prove that Ormet's reason was a pretext for really discharging him because he is African American and/or disabled within the context of the ADA.

## FINDINGS BY THE COURT

### THE ADA CLAIM

■ Woodfolk asserts that he has a "disability" as that term is defined in the ADA and interpreted by the U.S. Supreme Court and lower federal courts.

The statutory definition is found in 29 C.F.R. § 1630.2, which in essence provides that the individual in question must have (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. To be considered a disability within the meaning of the ADA, therefore, a physical or mental impairment must substantially limit a major life activity. See *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995).

Woodfolk believes he has a condition that falls within (1) or (2) of the definition because the company knew prior to his discharge that he had become drowsy on the job, and the company was aware he was on medication for high blood pressure. He further alleges that the side effects of his blood pressure medication substantially limited his ability to work.

This contention is not supported by the evidence in this case viewed in the light most favorable to the plaintiff. There is no evidence submitted by the plaintiff that demonstrates that his alleged condition limited any major life activity. He was certainly able to do his job successfully at Ormet for many years. The plaintiff testified several times in his deposition given in connection with this lawsuit that none of his alleged disabilities limited his ability to do his work in any way. He never had to ask his employer to make any accommodation for any of his alleged disabilities. (See Woodfolk deposition pps. 95–96.)

Very simply, Mr. Woodfolk has failed to demonstrate that he suffered from a "disability" at the time of his discharge in 1997 or that the defendant took any action against him because of any supposed disability.

**THE RACE DISCRIMINATION CLAIM**

■ Woodfolk has demonstrated that he is an African American and that he is a member of a protected class. He has proven he was discharged and that he was qualified for the position from which he was discharged. He has not and cannot show that he was replaced by a person outside the protected class. Mr. Woodfolk was replaced at Ormet by an African–American male. (See affidavit of Eva Ivey.) Therefore, the plaintiff has not made out a *prima facie* case under the announced standards of the precedent judicial opinions. See *Reeves*, 120 S.Ct. at 2106.

■ Assuming, *arguendo*, that the plaintiff did establish such a requisite *prima facie* case, the court finds that Ormet has articulated a legitimate reason for the discharge. The plaintiff was fired because he violated the company rule against employees sleeping at the plant during work hours. The plaintiff contends that this reason was a pretext and that he was, in truth, discharged because he was African American. To prove this, he asserts that two white men were caught sleeping and were not terminated and that he was the first African American to have been discharged for a violation of the "No Sleeping Rule." The defendant has conceded that, prior to the implementation of the strict enforcement of this rule in late 1994, enforcement and the resulting discipline were lax and not as harsh. The evidence in this matter is clear that at least seven other individuals, both Caucasian and African American, were discharged for sleeping by Ormet prior to Woodfolk's discharge and after the 1994 change of policy. (See affidavit of Gregory Driscoll, Sr.)

The two white men referred to by the plaintiff were both disciplined before the 1994 sleeping-on-the-job "crackdown." One pretextual argument advanced by the plaintiff is that a superintendent at the plant, Bobby Boyle, who was the subject of a grievance filed by the plaintiff and other

African Americans alleging race discrimination, fired the plaintiff in retaliation for filing the grievance. Additionally, plaintiff alleges that Boyle used racial slurs at the plant and, therefore, fired the plaintiff because he was African American. Neither of these arguments is supported by any evidence. First, Boyle did not fire the plaintiff and did not participate in the decision to do so. (See affidavit of Gregory Driscoll, Sr.) Boyle was a witness to the fact that the plaintiff was asleep at the plant during work hours, but that is not significant because the plaintiff admits that he was asleep. The grievance filed against Boyle by the plaintiff and others occurred several years before the plaintiff's discharge. (See deposition of Bobby Boyle, p. 25.)

 Boyle admitted to using a degrading term for African Americans, but there is no evidence that the plaintiff was ever present when such words were uttered, and, in fact, the plaintiff could not recall any details of what was said or under what circumstances they were said. (See Woodfolk deposition pps. 70, 71, 73, 74 and 75.) Such stray remarks do not prove a pretextual basis for Woodfolk's discharge, and the law is clear that such remarks must relate to Mr. Woodfolk for him to be able to claim any advantage in this matter. See *Krystek v. Univ. of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir.1999); but see *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225–26 (5th Cir.2000) (questioning the continued validity of this circuit's "stray remarks" jurisprudence in the wake of Reeves).

It is unfortunate that Ormet saw discharge as its only disciplinary measure in this matter, but its decision was a business one that is legitimately supported by the evidence. The fact that Mr. Woodfolk is an African American; is obese; has high blood pressure; is on medication; and perhaps suffers from a sleeping disorder played no role in his termination. Woodfolk has failed to establish a genuine issue as to whether he was a victim of racial discrimination or whether his discharge was predicated upon a protected disability. See Fed.R.Civ.P. 56(c).

The defendant's motion for summary judgment is GRANTED and all of plaintiff's claims under both state and federal law are DISMISSED.