James O. GREASON, Plaintiff,

v.

**SOUTHEASTERN RAILROAD ASSOCIATED BUREAUS,** Defendant.

Civ. A. No. C84–2443A.

United States District Court, N.D. Georgia, Atlanta Division.

March 27, 1986.

Prince A. Brumfield, Decatur, Ga., for plaintiff.

Charles A. Edwards, Lewis B. Gardner, Atlanta, Ga., for defendant.

## ORDER OF COURT

HORACE T. WARD, District Judge.

This action presents a claim under 42 U.S.C. § 1981 and the Fourteenth Amendment for racial discrimination in employment. Plaintiff, a black male, alleges his former employer, the Southeastern Demurrage and Storage Bureau, wrongfully denied him severance pay and certain reemployment assistance allegedly given to other employees because of his race. Plaintiff seeks back pay, "employment," punitive damages, and attorneys fees from defendant on the theory that defendant was his employer for the purpose of a § 1981 action.

The matter has come before the court on defendant's motion to dismiss because of expiration of the applicable statute of limitations and on defendant's four motions for summary judgment. Defendant requests summary judgment on the following grounds: (1) defendant was not plaintiff's employer; (2) plaintiff received all benefits to which he was entitled; and (3) plaintiff cannot establish a *prima facie* case of discrimination because he cannot show he received different treatment as a consequence of his race.

## FINDINGS OF FACT

1. Plaintiff, James Greason, is a black male.

2. The Southeastern Demurrage and Storage Bureau (hereinafter "Storage Bureau") was an unincorporated membership association composed of railroads operating in a specified territory in the southeastern United States.

3. The Storage Bureau performed certain accounting, record-keeping, and supervisory functions related to railroad car "demurrage" or siding rentals, detention, and storage for its member railroads.

4. Defendant, Southeastern Railroads Associated Bureaus (hereinafter "Associated Bureaus") is an unincorporated membership association composed of certain railroads operating in the southeastern United States.

5. Associated Bureaus acts as a fiscal agent for the Storage Bureau and other affiliated railroad bureaus. Its duties include issuing paychecks for its member bureaus.

6. Both the Storage Bureau and the Associated Bureaus were governed by their respective executive committees and administrative committees, which were composed of designated representatives from the member railroads.

7. At all times relevant to this action, Bates Bowers served as chairman of the Storage Bureau executive committee and executive committee chairman and chief administrative officer of the Associated Bureaus.

8. The member railroads paid the expenses of the Storage Bureau and the Associated Bureaus.

9. The Storage Bureau's daily affairs were handled by a manager appointed by its executive committee.

10. The manager's responsibilities included, *inter alia*, hiring and managing Storage Bureau employees.

11. At all times relevant to this action, Dewey Jones served as the Storage Bureau Manager.

12. The rights of certain of the Storage Bureau employees were established by the collective bargaining agreement between the Storage Bureau and the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO (hereinafter "BRAC").

13. Plaintiff, Greason, was employed by the Storage Bureau in various positions from July 1974 to November 30, 1982.

14. Greason and two other employees were "furloughed" by the Storage Bureau in November 1982, which meant their positions were eliminated and they were entitled to Railroad Retirement Act unemployment benefits.

15. The Storage Bureau continued to release other employees during 1983 and ultimately ceased operations on December 31, 1983.

16. Dewey Jones handled the employee terminations for the Storage Bureau.

17. Greason filed his complaint in this action on December 3, 1984.

## CONCLUSIONS OF LAW

### A. *Statute of Limitations*

Defendant, Associated Bureaus, contends in its motion to dismiss that plaintiff's claim is barred because he failed to bring this action within the applicable two-year statutory limitation period.

Although Section 1981 claims are governed by federal law, there is no applicable federal statute of limitations. Consequently, the most appropriate statute of limitations of the forum state applies. *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The applicable Georgia statute is *O.C.G.A.* § 9–3–22 (former *Ga.Code Ann.* § 3–704), which sets a two-year limitation on claims for back pay and damages, and a twenty-year limitation on suits for equitable relief. Thus, a Section 1981 action for back pay must be filed within two years after the plaintiff knew or reasonably should have known that the challenged discrimination occurred. *Stafford v. Muscogee County Board of Education*, 688 F.2d 1383, 1389–90 (11th Cir.1982) (quoting in part from *McWilliams v. Escambia County School Board*, 658 F.2d 326, 330 (5th Cir.1981)).

Greason did file his complaint two years and three days after the Storage Bureau eliminated his position. However, his claim alleges wrongful failure or refusal to award severance pay or to assist him in finding other employment within the railroad industry. These acts or failures to act could have occurred after December 3, 1984, and thus would fall within the applicable limitation period. Accordingly, defendant's motion to dismiss is DENIED.[1]

### B. *Plaintiff's "Employer" for Purpose of a Discrimination Claim Under 42 U.S.C. § 1981*

To prove a claim under Section 1981, a plaintiff must show that (1) he belongs to a racial minority; (2) he was either terminated from or denied employment by the defendant; (3) said action by the defendant occurred with regard to plaintiff but not to persons in a different class; and (4) defendant acted with intent to discriminate against plaintiff. *E.g., Scarlett v. Seaboard Coast Line Railroad Co.*, 676 F.2d 1043 (11th Cir.1982) (adopted Title VII proof standards established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

In the instant case, there is no dispute that Greason is a member of a racial minority. The issue before the court is whether he was either terminated or denied employment or other related benefits by the defendant, Associated Bureaus. If not, then the court need not address the merits of his racial discrimination claim.

Greason acknowledges that he was employed by the Storage Bureau. He argues, however, that the Storage Bureau was funded and controlled by the Associated Bureaus, making the latter his "employer" for the purpose of this action. Because the Storage Bureau and the Associated Bureaus executive committees had the same chairman, he contends, the Associated Bureaus exercised sufficient managerial and

---

1. In his prayer for relief, Greason also requested "employment." If this plea is a request for equitable relief, the twenty-year limitation will apply.

administrative control over the Storage Bureau for the Associated Bureaus to be considered his employer.

Courts considering Title VII and Section 1981 claims have adopted the liberal rules used in National Labor Relations Act cases to determine whether two or more separate business entities are so related as to be "joint employers" to enable the court to assert subject matter jurisdiction over each. *E.g., Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir.), *reh. den.*, 707 F.2d 515 (5th Cir.1983); *Perrin v. Florida Power & Light Co.*, 35 Fair Empl.Prac. Cas. (BNA) 117 (S.D.Fla.1984); *Nation v. Winn-Dixie Stores, Inc.*, 567 F.Supp. 997 (N.D.Ga.1983). To assert a joint employer claim, a plaintiff must show either that two entities operated as a "joint enterprise" or that one entity acted as the other's agent with regard to employment practices. *E.g., Nation*, 567 F.Supp. at 1010; *EEOC v. Upjohn Corp.*, 445 F.Supp. 635 (N.D.Ga. 1977).

The "integrated enterprise" doctrine imposes a four-part inquiry regarding the relationship of the two entities: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Upjohn*, 445 F.Supp. at 639 (adopting test articulated in *Radio Union v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965)). For the agency theory, the claimant must show that one entity acted as the other's agent with respect to employment practices. *Ingber v. Ramada Inns, Inc.*, 20 Fair Empl.Prac.Cas. (BNA) 1006 (N.D. Ga.1979). For either the integrated enterprise or agency theory, the primary question must be who made the final decision regarding employment matters related to the plaintiff. *Trevino*, 701 F.2d at 404.

Given the facts of the instant case, the court cannot find the Associated Bureaus was Greason's employer under either theory. The evidence does show the two bureaus had the same executive committee chairman, and the membership of both bureaus and their executive committees apparently included some or all of the same parties. This evidence indicates that the same persons or entities may have made management decisions for each bureau. However, that evidence suggests only that both bureaus may have been controlled in whole or in part by other persons or entities, not that defendant controlled or managed the Storage Bureau. Similarly, to the extent the two bureaus conducted related operations for their member railroads, there is no evidence the Associated Bureaus exercised any control over these activities or operations of the Storage Bureau.

Moreover, there is no evidence of linkage or control between defendant and the Storage Bureau with regard to labor relations, the most critical area of the court's inquiry. The Storage Bureau signed its own collective bargaining agreement with BRAC. The Storage Bureau's manager, Dewey Jones, apparently made hiring and termination decisions and handled other employment issues such as severance pay and furloughs. Although defendant provided accounting services and issued pay checks for the Storage Bureau, nothing in the record indicates the Associated Bureaus used its funds for these activities. Again, the evidence indicates only that the member railroads, through their executive committee chairman and members, may have exercised some degree of management control over both defendant and the Storage Bureau. That circumstance cannot be construed to show that defendant controlled the Storage Bureau with regard to labor relations and decisions involving or affecting plaintiff.

In addition, nothing in the record indicates that defendant should be considered the Storage Bureau's agent for labor relation decisions regarding Greason. As discussed above, the nexus between the two bureaus is defendant's services as a fiscal agent for the Storage Bureau, including issuance of pay checks. There is no evidence that the Associated Bureaus controlled, managed, supervised, or otherwise

affected the Storage Bureau's labor practices and policies.

Greason contends the executive committee chairman of both bureaus, Bates Bowers, negotiated termination agreements for other employees or helped them obtain other employment with member railroads. Defendant has filed affidavits of Bowers and others, all of which deny Bowers negotiated any such agreements. However, even if Greason substantiated this allegation, that showing would not be sufficient to establish an employment nexus between defendant and the Storage Bureau. Bowers could have taken such actions in his capacity as chairman of the Storage Bureau executive committee.

The purpose of summary judgment procedure " 'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " *Scarboro v. Universal C.I.T. Credit Corp.*, 364 F.2d 10, 14 (5th Cir.1966) (quoting Advisory Committee Note to 1963 Amendment of Fed.R.Civ.P. 56). Once the defendant offers affidavits or other evidence to pierce the allegations of the plaintiff's complaint, the plaintiff cannot rest on his pleadings but must set forth, by affidavits or other evidence, specific facts showing there is a genuine issue for trial. *E.g., Scarboro*, 364 F.2d at 14.

■ In the instant case, Greason has based his claim primarily on his perceptions or suspicions regarding possible connections between the two bureaus, but has offered no facts of which he has personal knowledge to support his claim. Meanwhile, defendant has pierced these allegations with affidavits, interrogatory answers, admissions of fact, and its deposition of plaintiff. Against this evidence, plaintiff's mere conjectures and opinions cannot stand. Accordingly, the court finds defendant should not be considered plaintiff's employer for this action, and defendant's motion for summary judgment is GRANTED.

CONCLUSION

It is hereby ORDERED that defendant's motion to dismiss is DENIED, and defendant's motion for summary judgment is GRANTED. The clerk of the court is DIRECTED to enter judgment in favor of defendant, and this action is DISMISSED.