Johnny L. JOHNSON

v.

CROWN ENTERPRISES, INC., Dixie Harvesting Company, Inc., and Cora–Texas Manufacturing Company, L.L.C.

No. CIV.A. 01–481–B–M3.

United States District Court, M.D. Louisiana.

Oct. 10, 2003.

Dale Edward Williams, Metairie, LA, for plaintiff.

Edmond Dwayne Jordan, Brusly, LA, Thomas David Jones, Baton Rouge, LA, for defendants.

## RULING

POLOZOLA, Chief Judge.

Defendants Crown Enterprises, Inc. ("Crown"), Dixie Harvesting Company, Inc. ("Dixie"), and Cora–Texas Manufacturing Company, L.L.C. ("Cora–Texas") have filed motions for summary judgement and to dismiss against plaintiff Johnny L. Johnson pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure. In their memorandum in support of the motions, defendants make the following arguments. Defendants contend that plaintiff's claims under Title VII should be dismissed because: (1) plaintiff failed to exhaust his administrative remedies under Title VII of the Civil Rights Act of 1964; and (2) plaintiff's allegation of racial discrimination is not legally cognizable under Title VII because plaintiff is an independent contractor. Defendants seek dismissal of plaintiff's claims under 42 U.S.C. § 1981 because: (1) plaintiff's § 1981 claim is barred by the statute of limitations, or in the alternative, the equitable doctrine of laches; and (2) no genuine issue of material fact exists regarding plaintiff's ability to come forward with direct or circumstantial evidence to prove his claims under § 1981.[1] With respect to

---

1. Defendants actually do not argue in their briefs that there is no genuine issue of material fact regarding plaintiff's ability to come forward with direct or circumstantial evidence to prove his claims under § 1981. Their brief is more concerned with technical issues and specific defenses. However, plaintiff covered his § 1981 claim and his evidentiary burden in great detail in his opposition memorandum. See Plaintiff's Opposition to Defendants' Rule 56 Motion for Summary Judgment, Rule 12(b)(1) Motion to Dismiss and Rule 12(b)(6) Motion to Dismiss, Rec. Doc. No. 73, pp. 14–21.

both claims, defendants contend that Crown and Cora–Texas should be dismissed from the suit because plaintiff was not an "employee" of Crown or Cora–Texas and has never been an "employee" of Crown or Cora–Texas. Defendants also object to plaintiff's request that the Court apply the term "enterprise" under the Fair Labor Standards Act of 1978 to make plaintiff an "employee" of Crown or Cora–Texas under the facts of this case.

The plaintiff has filed an opposition to the defendants' motions. In his opposition, plaintiff argues that: (1) plaintiff was indeed an employee of the three defendants because there is common ownership; (2) there was a continuing violation which interrupts the statute of limitation; (3) the plaintiff did exhaust remedies; (4) the Court should adopt the definition of "enterprise" as interpreted in the Fair Labor Standard Act of 1978 ("FLSA"); and (5) there are material issues of fact in dispute which preclude the Court from granting summary judgment. For reasons which follow, the Court finds that defendant's motions should be granted.

## A. Standard for Summary Judgment

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[3]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[4] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[5] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[6] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[8]

2. Fed R. Civ. P. 56(c); *Wyatt v. Hunt Plywood Co., Inc.,* 297 F.3d 405, 408–09 (5th Cir. 2002); *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir.1996); and *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996).

3. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Gunaca v. Texas,* 65 F.3d 467, 469 (5th Cir.1995).

4. *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046–47 (5th Cir.1996).

5. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1077 (5th Cir.1994); and *Wallace, supra* at 1047.

6. *Wallace, supra* at 1048 (citations omitted); *see also S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996).

7. *McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing,* 70 F.3d 26 (5th Cir.1995).

8. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## B. Title VII Claims

### 1. Failure to Exhaust Administrative Remedies under Title VII

■ Defendants contend that this Court had no jurisdiction over plaintiff's case against Crown and Cora–Texas because plaintiff failed to exhaust his administrative remedies vis-a-vis these two defendants. Plaintiff concedes and it is clear from a review of the record that plaintiff did not file a complaint with the E.E.O.C. against Crown or Cora–Texas alleging racial discrimination.[9] Plaintiff's opposition provides that plaintiff and defendant have stipulated to litigate only the § 1981 claims with respect to Crown and Cora–Texas and the Title VII claim should be dismissed against these two defendants.[10] The Court agrees to accept the stipulation. It is well-settled that a complainant must exhaust his administrative remedies with the E.E.O.C. in a Title VII action, and his failure to do so deprives a federal district court of jurisdiction over the Title VII claim.[11] Thus, plaintiff's Title VII claims against Crown and Cora–Texas are dismissed without prejudice.

### 2. Plaintiff's Status as an Independent Contractor

■ In their memorandum, defendants also allege that this Court has no jurisdiction over plaintiff's claim under Title VII because plaintiff was not an "employee" of Dixie under Title VII. Specifically, defendants contend that plaintiff was an independent contractor.[12] Plaintiff's opposition states that plaintiff and defendants have stipulated to not litigate this matter under Title VII.[13] The Court agrees to accept the stipulation because the contract entered into between plaintiff and Dixie contains language often included in a typical independent contractor agreement. The language in this agreement clearly shows that plaintiff was an independent contractor under the facts of this case. Further, it is well-settled that an employee-employer relationship is an absolute prerequisite to claims filed pursuant to Title VII. An independent contractor relationship does not satisfy this prerequisite.[14] Since plaintiff has stipulated to the fact that he cannot meet this prerequisite as to Dixie, Crown, or Cora–Texas and because the evidence is clear that plaintiff was indeed an independent contractor, plaintiff's Title VII claims against Dixie, Crown, and Cora–Texas are dismissed with prejudice.

---

9. Defendants' Memorandum of Authorities in Support of Their Motions for Summary Judgment and Dismissal, Rec. Doc. No. 48, pp. 15–17 (Nov. 4, 2002).

10. Plaintiff's Opposition to Defendants' Rule 56 Motion for Summary Judgment, Rule 12(b)(1) Motion to Dismiss and Rule 12(b)(6) Motion to Dismiss, Rec. Doc. No. 73, p. 1 (Aug. 15, 2003).

11. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379–80 (5th Cir.2002); and *Tolbert v. U.S.*, 916 F.2d 245, 248 (5th Cir.1990).

12. Defendants' Memorandum of Authorities in Support of Their Motions for Summary Judgment and Dismissal, Rec. Doc. No. 48, pp. 21–23 (Nov. 4, 2002).

13. Plaintiff's Opposition to Defendants' Rule 56 Motion for Summary Judgment, Rule 12(b)(1) Motion to Dismiss and Rule 12(b)(6) Motion to Dismiss, Rec. Doc. No. 73, p. 2 (Aug. 15, 2003).

14. *Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117, 119 (5th Cir.1993); *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158 (5th Cir.1986); and *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir.1985)

## C. Claims under § 1981

### 1. Is the § 1981 claim barred by the statute of limitations, or in the alternative, the equitable doctrine of laches to the § 1981 claim

■ Plaintiff was "fired" on September 30, 2000. His original complaint was filed on June 15, 2001 seeking recovery under Title VII. The § 1981 claim was not included in the original complaint. On May 10, 2002, plaintiff requested leave to amend his original complaint to include his claims under 42 U.S.C. § 1981. After considering defendants' opposition, the magistrate judge granted plaintiff's motion to amend the complaint on July 23, 2002. Because the § 1981 claim was filed over one year from the date that plaintiff was fired, defendants claim that plaintiff's § 1981 claim is barred by the statute of limitations. The Court agrees.

■ In *Goodman v. Lukens Steel Co.*,[15] the United States Supreme Court held that suits brought under § 1981 are governed by the state statute of limitations for personal injury suits as set forth by the law of the forum state.[16] Both the Fifth Circuit[17] and the Middle District of Louisiana[18] have recognized and followed *Good-*

*man* and have held that § 1981 claims are subject to Louisiana's one-year period applicable to tort violations. Even though state law governs the limitation period, federal law determines when a civil rights action accrues and when the statute of limitations begins to run.[19]

Therefore, the Court holds that even though the plaintiff may have filed a timely Title VII claim with the E.E.O.C., such a filing does not save the § 1981 claim, nor does it interrupt the one-year statute of limitations.

In *Johnson v. Railway Express Agency, Inc.*,[20] the United States Supreme Court held that the filing and processing of charges with the E.E.O.C. under Title VII does not toll the running of the state prescriptive periods governing § 1981 claims.[21] The Fifth Circuit has adopted the holding of *Johnson* in subsequent cases.[22] Plaintiff argues that his § 1981 claim was not prescribed on June 15, 2001, when his original complaint was filed asserting his Title VII claims only. Plaintiff claims his § 1981 suit is not prescribed for two reasons: (1) there was a continuing violation; and, (2) the provisions of Rule 15(c) of the Federal Rules of Civil Procedure apply. Plaintiff alleges defendants' actions consti-

---

**15.** 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).

**16.** *Id.* at 661–62, 107 S.Ct. at 2621.

**17.** *Taylor v. Bunge Corp.*, 775 F.2d 617, 618(5th Cir.1985)("A section 1981 claim is best characterized as a tort under Louisiana law and is, therefore, governed by the one year prescriptive period for delictual actions…").

**18.** *Woodfolk v. Ormet Primary Aluminum, Corp.*, 191 F.Supp.2d 703, 706 (M.D.La.2001) ("It has long been held that claims under § 1981 must be brought within the one-year period applicable to tort actions under Louisiana law."); and *Hughes v. Arveson*, 924 F.Supp. 735, 738 (M.D.La.1996)("Section 1981 has no limitations period; therefore, the

Court must rely on the applicable state statute of limitations. Louisiana Civil Code article 3492 provides for a one-year prescriptive period for offenses or quasi-offenses. Thus, the plaintiff had one year from the offense in question to bring this action.") (citations omitted).

**19.** *Perez v. Laredo Junior College*, 706 F.2d 731, 733(5th Cir.1983).

**20.** 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)

**21.** *Id.* at 462, 95 S.Ct. at 1721.

**22.** *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 250 (5th Cir.1980); and *Taylor, supra* at 618–19.

tute a continuing violation of § 1981 because defendants continually violated plaintiff's rights each time they failed to renew his contract. Because the most recent "violation" occurred when defendants failed to renew plaintiff's contract in August 2003, plaintiff argues he is well within the § 1981 prescriptive period. Plaintiff also contends that the § 1981 claim asserted in the amended complaint should relate back to the filing of the original complaint on June 15, 2001. If the Court finds the amended complaint does relate back to the date the original complaint was filed, plaintiff contends his § 1981 suit was timely filed.

### a. Continuing Violation

■■■ Plaintiff relies heavily on the continuing violation theory to oppose defendants' motions. The jurisprudence on continuing violations has been characterized as "inconsistent and confusing."[23] "The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred."[24] The Fifth Circuit has identified three factors that must be considered by the Court when determining if a continuing violation has occurred: (1) whether the alleged acts involve the same type of discrimination; (2) the frequency of the acts; and (3) whether the act has the degree of permanence that should trigger an employee's awareness of and duty to assert his or her rights.[25] The continuing violation theory will only apply to claims outside the prescriptive period if the plaintiff timely filed a claim based on a present violation. Thus, a plaintiff cannot use the continuing violation theory to revive claims which were concluded in the past even though the effects of the claims may still persist. It is also important that courts not confuse continuing violations with a single violation followed by continuing consequences. Only continuous unlawful acts may form the basis of a continuing violation.[26] Thus, the correct inquiry is not "mere continuity;" instead the key inquiry is whether any present violation exists.[27]

■■■ In those cases where an employee has been terminated, the courts in the Fifth Circuit have consistently held that the continuing violation theory does not apply. In the Fifth Circuit, the date of discharge is the date when the statute of limitations in a § 1981 claim begins to run. Thus, in *Taylor v. Bunge Corp.*,[28] the plaintiff's § 1981 claim was dismissed because it was brought outside Louisiana's prescriptive period despite the plaintiff's argument that his claim for back-pay was a continuing violation. In dismissing the claim, the Fifth Circuit held that "termination of employment either through discharge or resignation is not a continuing violation because the individual ceases to be an employee on the date of his dis-

---

**23.** *Scarlett v. Seaboard Coast Line R. Co.*, 676 F.2d 1043, 1049 (5th Cir.1982).(citations omitted)

**24.** *McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 (5th Cir.1993) (citation omitted). *See also Perez, supra* at 733 ("If…the statutory violation does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed.")

**25.** *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir.1998).

**26.** *McGregor, supra* at 866–67.

**27.** *Gonzalez v. Firestone Tire & Rubber Co., supra* at 249 (citations omitted).

**28.** *Taylor, supra.*

charge and all of his legal claims mature at that time."[29] The Court also noted that under "plaintiff's suggested application of the [doctrine], his claims would never prescribe; this would destroy the policy of finality underlying the statute of limitations."[30]

This very Court addressed a similar issue in the *Hughes* case.[31] In *Hughes,* the plaintiff filed suit under § 1981 following her termination from the Louisiana Department of Education.[32] The plaintiff had been terminated on July 13, 1992, but she did not file suit until October 11, 1994. The plaintiff argued the effects of her demotion still remained, and thus, the continuing violation theory was applicable. Quoting *McGregor v. Louisiana State University Bd. of Sup'rs,*[33] this Court stated "[w]e must be careful not to confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation."[34] Because the Court held that the statute of limitations accrued from the date the plaintiff was discharged, this Court found the § 1981 claim was time-barred.[35]

Similarly, in *Blanco v. Willis Drilling Co.,*[36] the Southern District of Texas dismissed a former employee's § 1981 claim noting "the act of terminating one from employment is an occurrence which does not constitute a continuing violation; therefore, the statute of limitations begins to run on the date of discharge."[37]

Thus, the Court finds that the continuing violation theory does not apply under the facts of this case.

### b. Relation Back under Rule 15(c)

■ In addition to the continuing violation argument, plaintiff also seeks to keep his § 1981 claim viable under Rule 15 of the Federal Rules of Civil Procedure by arguing the § 1981 claim asserted in his amended complaint should relate back to the filing of the original complaint on June 15, 2001. Under Rule 15, an amendment to a pleading relates back to the date of the original pleading when, *inter alia,* the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.[38] Plaintiff cites a number of cases in support of his argument to apply Rule 15 to his case.

29. *Id.* at 619.

30. *Id.*

31. *See Hughes, supra.*

32. *Id.* at 736.

33. *McGregor, supra.*

34. *Hughes, supra* at 738 (citation omitted).

35. *Id.*

36. 1986 WL 5460 (S.D.Tex.1986).

37. *Id.*

38. Fed R. Civ. P. 15(c). Feral Rule of Civil Procedure 15(c) reads in full "(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

However, none of the cases cited discuss the true issue pending before this Court—whether plaintiff's § 1981 claim asserted in the amended complaint arose out of the same conduct, transaction, or occurrence that was set forth or attempted to be set forth in the original complaint that only asserted Title VII claims. It is clear that the Title VII claim and the § 1981 claim are two separate and distinct claims that have different elements of proof and different procedural requirements regarding exhaustion of remedies and time limitations.

Plaintiff's reliance on *Jones v. State of Louisiana*,[39] *Doss v. South Cent. Bell Telephone Co.*,[40] and *Hildebrand v. Honeywell, Inc.*[41] for the proposition that "mere technical defects in a pleading do not provide a basis for dismissal"[42] is misplaced and fails to support his Rule 15(c) argument. These cases do support plaintiff's argument that the mere failure to cite the correct statute will not preclude a plaintiff from later asserting recovery under that statute as long as the initial complaint gave the defendant fair notice of the nature of the claims.[43] However, *Jones, Doss,* and *Hildebrand* are in the context of a Rule 15(a) inquiry,[44] not a Rule 15(c) rela-

tion back. Furthermore, all three cases address whether or not the initial complaint alleged facts which would permit an amendment under Rule 15(a). None of these three cases reach the Rule 15(c) relation back inquiry which is the basis for defendant's argument now pending before the Court.

The second category of cases plaintiff relies on in his brief include *Manning v. Chevron Chemical Co., LLC*,[45] *Hornsby v. Conoco, Inc.*,[46] and *Sanchez v. Standard Brands Inc.*[47] Plaintiff's reliance on these cases is flawed in two respects. While plaintiff utilizes these cases to advocate relation back, the Fifth Circuit actually did not allow the relation back theory to apply in two of these cases—*Manning* and *Hornsby*. In *Manning*, the Fifth Circuit held an amended E.E.O.C. charge alleging disability discrimination did not relate back to an original E.E.O.C. charge alleging race, gender, and retaliation because the original E.E.O.C. complaint did not include sufficient facts to put the employer on notice that the employee may have additional claims of discrimination.[48] The Court held that amendments raising a new

---

**39.** 764 F.2d 1183 (5th Cir.1985).

**40.** 834 F.2d 421 (5th Cir.1987).

**41.** 622 F.2d 179 (5th Cir.1980).

**42.** *Jones, supra* at 1185.

**43.** *Id.*("An initial complaint must be construed liberally. Mere technical defects in a pleading do not provide a basis for dismissal.") (citations omitted); *Doss, supra* at 423 (Reversed lower court's dismissal of complaint where the plaintiff stated a cause of action for age discrimination and made only a technical mistake in failing to cite the ADEA.); and *Hildebrand, supra* at 180 (Reversed lower court's dismissal of wrongful termination suit, based on age and sex, where the plaintiff had alleged diversity jurisdiction, but had failed to allege jurisdiction specifically under Title VII and the ADEA.).

**44.** Fed R. Civ. P. 15(a). Feral Rule of Civil Procedure 15(a) reads in part "Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

**45.** 332 F.3d 874 (5th Cir.2003).

**46.** 777 F.2d 243 (5th Cir.1985).

**47.** 431 F.2d 455, 457 (5th Cir.1970) (Reversed lower court's dismissal of complaint where the plaintiff had checked the wrong box in filling out an administrative charge form supplied by the E.E.O.C., but had alleged sufficient factual allegations on the original form to support later charges made.).

**48.** *Manning, supra* at 879.

theory of legal recovery generally do not relate back to an original discrimination charge.[49] While the court acknowledged a narrow exception when the facts supporting the original claim also support the amended claim, the court qualified this exception by pointing out the standard was not whether the amended complaint added new facts, but rather, whether the employee already included sufficient facts in his original complaint to put the employer on notice that he may have additional discrimination allegations.[50] Similarly, in *Hornsby*, the Fifth Circuit held an amended E.E.O.C. charge alleging sexual harassment did not relate back to the original E.E.O.C. charge based on age discrimination and retaliation because the amended charge added new and independent charges based on new and independent facts to support the sexual harassment claim.[51]

The second flaw concerning *Manning, Hornsby*, and *Sanchez* is that they do not analyze relation back in the context of Rule 15(c). Instead, these three cases analyze relation back in the context of an E.E.O.C. complaint under 29 C.F.R.

§§ 1601.12(b) and 1626.8(c).[52] The language of these E.E.O.C. regulations does not mirror the language of Rule 15. Because it is clear in the Fifth Circuit that the filing of a Title VII claim does not interrupt prescription on a § 1981 claim, the Court finds that Rule 15(c) does not apply under the law and facts of this case.

### c. Doctrine of Equitable Tolling

▅▅ Finally, plaintiff contends the doctrine of equitable tolling should be applied to his § 1981 claim because defendants' counsel intentionally delayed filing their answers until after the prescriptive period on plaintiff's § 1981 claim had run.[53] In *Manning v. Chevron Chemical Co.*,[54] the Fifth Circuit enumerated three circumstances under which equitable tolling may apply: (1) the pendency of a suit between the same parties in a wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the E.E.O.C.'s misleading the plaintiff about his rights. However, the Court was very careful to state that courts should only apply equitable tolling limita-

---

**49.** *Id.* at 878.

**50.** *Id.* at 879 ("Manning appears to assume that, under our cases, an employee can amend his charge of discrimination at any point to allege a new theory of recovery, as long as the employee does not allege any new facts in the amended charge. Manning misunderstands the import of our precedent. The issue is not whether the employee adds any facts when he amends his charge of discrimination. Instead, the question is whether the employee already included sufficient facts in his original complaint to put the employer on notice that the employee might have additional allegations of discrimination.")

**51.** *Hornsby, supra* at 247.

**52.** 29 C.F.R. § 1601.12(b) reads in part "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allega-

tions made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1626.8(c) reads in part "[a] charge may be amended to clarify or amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not again be referred to the appropriate State agency."

**53.** Rec. Doc. No. 73, p. 24 (Aug. 15, 2003).

**54.** *Manning, supra.*

tions "when the employer's affirmative acts mislead the employee and induce him not to act within the limitations period." [55] Considering this qualification, the Court refused to allow the plaintiff in *Manning* to utilize equitable tolling when his failure to timely bring a disability claim was based on the employee's failure to come forth with evidence that supported his disability claim until after the plaintiff's original discrimination claims were filed. [56] Defendants' actions in delaying service of their answer does not meet the *Manning* standard. Plaintiff had ample opportunity to compel an answer conduct discovery or even take a default judgment. Plaintiff's counsel also had the opportunity to research all of the legal issues that may be involved in this litigation including any defenses which the defendants might attempt to use. There are no affirmative acts of the defendants which prevented the plaintiff from properly preparing his case. Plaintiff's failure to anticipate a defense is not ground for applying equitable tolling under the facts of this case. Thus, the Court finds as a matter of law that the doctrine of equitable tolling does not apply under the facts of this case.

### D. "Enterprise" under Title VII and the Fair Labor Standards Act

Plaintiff seeks to have the Court apply the term "enterprise" as used in the Fair Labor Standards Act of 1978 to make plaintiff an "employee" of Crown and Cora–Texas. Plaintiff contends that if defendants are treated collectively as an enterprise, then plaintiff would meet the number of employees requirement under Title VII. [57] This argument is now moot because plaintiff has stipulated to the dismissal of the Title VII claims in this matter and the Court earlier in this opinion dismissed the Title VII claims. Furthermore, there is no minimum number of employees requirement under § 1981 cases. [58] The more important reason plaintiff seeks to have the Court hold defendants as an enterprise is to create a contractual relationship between the plaintiff, Crown and Cora–Texas. As the record now stands, there is no evidence in the record to support a finding that plaintiff had a contractual relationship with Crown and Cora–Texas. Unless plaintiff can prove that all defendants collectively are an enterprise, his § 1981 claims against Crown and Cora–Texas lack merit.

#### 1. Jurisprudence

None of the parties have cited nor has the Court been able to find one case that applies the term "enterprise" under the Fair Labor Standards Act of 1978 in the context of Title VII or § 1981 claims. The Court did find the case of *Radio Union v. Broadcast Service* [59] which requires some discussion. In *Radio Union*, the Court enumerated a four-part test for determining if separate business entities were a single employer or an integrated enterprise for purposes of National Labor Relations Board: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership and financial control. [60]

55. *Id.* at 880.

56. *Id.*

57. Title VII requires that an employer must employ 15 employees or more for each working day in each of 20 or more calendar weeks in the current or preceding year. Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e(b).

58. *Johnson, supra* at 460, 95 S.Ct. at 1720.

59. 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965).

60. *Id.* at 256, 85 S.Ct. at 877.

Several circuits, including the Fifth Circuit, have applied *Radio Union* to civil rights actions.[61] The leading case in the Fifth Circuit is *Trevino v. Celanese Corp.*[62] In *Trevino*,[63] the Fifth Circuit qualified the *Radio Union* standard as follows:

The term "employer" as used in Title VII of the Civil Rights Act was meant to be liberally construed. Over the past decade, numerous courts have drawn upon theories and rules developed in the related area of labor relations in determining when separate business entities are sufficiently interrelated for an employee whose Title VII rights have been violated to file a charge against both entities. Thus, the rule has emerged that superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer. Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. Courts applying this four-part standard in Title VII and related cases

have focused on the second factor: centralized control of labor relations. This criterion has been further refined to the point that "the critical question to be answered then is: what entity made the final decisions regarding employment matters related to the person claiming discrimination?"[64]

Because the *Trevino* qualification makes the second factor the "most important" factor, some courts focus exclusively on that one factor.[65] Because of this narrow test, the *Radio Union/Trevino* factors are most often applied in the context of parent and subsidiary companies.[66]

The Fifth Circuit's application of the *Radio Union/Trevino* factors is an extremely fact-intensive exercise. For example, in *Trevino*, the Fifth Circuit found a material fact existed as to whether two companies constituted a single enterprise where the two companies exercised control over the other, had employees who considered themselves de facto employees of the other company, and each company had personnel documents bearing the signatures of the other company's managers.[67] Similarly, in *Skidmore v. Precision Printing and Pkg., Inc.*, the Court found the

---

**61.** *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2nd Cir.1995); *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983); and *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir.1993).

**62.** 701 F.2d 397 (5th Cir.1983). *See also Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763 (5th Cir.1997) ("In civil rights actions, 'superficially distinct entities may be exposed to liability upon a finding they represent a single, integrated enterprise: a single employer.'") (citation omitted). The Court must note that this is the *ONLY* test the Fifth Circuit applies in civil rights cases to determine if a single enterprise exists. Plaintiff also suggests use of a hybrid economic realities test. This approach was rejected by the Fifth Circuit in *Schweitzer*.

**63.** *Trevino, supra* at 404–05.

**64.** *Id.* at 403–04 (citations omitted).

**65.** *See Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 617 (5th Cir.1999) ("Traditionally the second of these four factors has been considered the most important, such that courts have focused almost exclusively on one question: which entity made the final decisions regarding employment matters relating to the person claiming discrimination.").

**66.** *See Skidmore, supra* note at 617; and *Zatarain v. WDSU–Television, Inc.*, 1995 WL 120092 (E.D.La.1995) ("A parent and subsidiary company may, under certain circumstances, be considered a single employer for purposes of Title VII.").

**67.** *Trevino, supra* at 404.

evidence that a parent and subsidiary corporation were a single enterprise for purposes of a sexual harassment claim was insufficient to go to the jury where the subsidiary offered its own benefit packages; hired, fired, promoted, and demoted its own employees; and negotiated its own union contracts. The Court further noted that the parent company had not participated in or intermingled with the subsidiary's operations.[68] Finally, in *E.E.O.C. v. Chemtech Intern. Corp.*,[69] the Court found an employer and related corporation to constitute a single enterprise for purposes of meeting the ADA jurisdictional requirements where the companies were owned by the same entity; shared office space, resources, employees, and facilities; and had overlapping officers.[70]

The application of the *Radio Union/Trevino* factors has been applied in both Title VII and § 1981 cases. In *Wayne v. Dallas Morning News*,[71] an employee sued her employer and its parent under both § 1981 and Title VII. In determining whether the parent was an employer for § 1981 purposes, the Court utilized the *Radio Union/Trevino* analysis and found that the two companies were not a single enterprise even though the employer had produced documents that supported interdependence during discovery, the plaintiff's paycheck stub bore the name of the parent, and the plaintiff was listed in a compa-

ny catalog as the parent's employee. The deciding factors, according to the Court,[72] included each company having a separate human resource department and the fact that the employer made all of its own employment decisions.[73]

Thus, there is no law to support applying the term "enterprise" under the Fair Labor Standards Act of 1978 to make plaintiff an "employee" of Crown and Cora–Texas. However, there are a number of cases which require the Court to analyze the facts of this case under the *Radio Union/Trevino* factors. The Court now turns to a review of the evidence in this case.

 Defendants argue that Crown is not in the trucking business and does not employ truck drivers like the plaintiff. Defendants also contend that Crown has never had any type of relationship with the plaintiff, and is a separate and distinct corporation from Dixie. According to the defendants, the evidence reveals that Dixie does not have any unified operations nor does it perform any related acts with Crown.[74] Finally, defendants state that Crown is not engaged in the same or similar services with either Dixie or Cora–Texas, the owners of the companies are substantially different, and the element of common control is missing.[75]

---

68. *Skidmore, supra* at 617.

69. 890 F.Supp. 623 (S.D.Tex.1995).

70. *Id.* at 625.

71. 78 F.Supp.2d 571 (N.D.Tex.1999).

72. *Id.* at 578–79.

73. Similarly, the *Greason v. Southeastern R.R. Associated,* 650 F.Supp. 1 (N.D.Ga.1986), the Northern District of Georgia, applying the *Radio Union/Trevino* factors said "[c]ourts considering Title VII and Section 1981 claims have adopted the liberal rules used in National Labor Relations Act cases to determine whether two or more separate business entities are so related so as to be 'joint employers' to enable the court to assert subject matter jurisdiction over each." *Id.* at 5 *citing Trevino, supra. See also Hunter v. Ark Restaurants Corp.,* 3 F.Supp.2d 9 (D.D.C.1998) (Applied Radio Union to determine if defendants were a single enterprise in § 1981 claim.).

74. Defendants' Memorandum of Authorities in Support of Their Motions for Summary Judgment and Dismissal, Rec. Doc. No. 48.

75. *Id.* at 25.

In his opposition to defendants' motions for summary judgment the plaintiff presents a different set of facts from those asserted by the defendants. Plaintiff contends that Crown is the parent company of Dixie and until recently, the companies had the same owner. According to plaintiff, Dixie's operations were administered from space owned and controlled by Crown. Plaintiff also notes that the head of Dixie testified in his deposition that those Dixie truck drivers who had problems went to the human resources director for Crown. Finally, plaintiff states that the evidence reveals that this same human resource director of Crown handled the E.E.O.C. claim made by plaintiff against Dixie.[76]

Applying the *Radio Union/Trevino* factors, some evidence does suggest that Crown and Dixie may be a single enterprise. However, the Court has already found that the second *Radio Union/Trevino* factor which requires the Court to determine which entity made the final decisions regarding employment matters related to the person claiming discrimination is the most important factor in the Fifth Circuit. A review of the record reveals that plaintiff has not presented any evidence showing Crown made the final decision regarding employment matters related to plaintiff's discrimination claim. This complete failure to present any evidence to show Crown's involvement with the final decision to terminate plaintiff's contract requires the Court to find that Dixie and Crown were not a single enterprise under the *Radio Union/Trevino* rule.

■ Defendants argue that Cora–Texas and Dixie are not single enterprises. According to defendants, Cora Texas is engaged in the manufacturing and processing of sugar cane—a trade completely distinct from Dixie or Crown. Defendants further contend that Cora–Texas has never had any type of relationship with plaintiff, does not have the same owners as Dixie or Crown, and does not share staff, bank accounts, or a common purpose with the other two defendants.[77] Plaintiff again presents a different view of Cora–Texas than that presented by the defendants. Plaintiff relies on the deposition of Dixie's president to show that all complaints regarding the renewal of Dixie's truck driving contracts went either to him or the sugar mill which is Cora–Texas. Plaintiff further argues that Cora–Texas was required to be listed as an additional insured with Dixie's truck drivers. Finally, plaintiff relies on Dixie's invoices which bill Cora–Texas for 100% of the amounts it paid truck drivers.[78]

Under the *Radio Union/Trevino* factors, there is little evidence to support an argument for treating Cora–Texas and Dixie as a single enterprise. The evidence reveals that the relationship between Cora–Texas and Dixie is nothing more than a business relationship between two companies. There are no interrelated operations and the ownership between the two entities is distinct. Finally, the elements of control and management are exclusive in each of

**76.** Plaintiff's Opposition to Defendants' Rule 56 Motion for Summary Judgment, Rule 12(b)(1) Motion to Dismiss and Rule 12(b)(6) Motion to Dismiss, Rec. Doc. No. 73, pp. 10–12 (Aug. 15, 2003).

**77.** Defendants' Memorandum of Authorities in Support of Their Motions for Summary Judgment and Dismissal, Civ. Action 01–CV– 481, United States District Court, Middle District of Louisiana, p. 16 (Nov. 4, 2002).

**78.** Plaintiff's Opposition to Defendants' Rule 56 Motion for Summary Judgment, Rule 12(b)(1) Motion to Dismiss and Rule 12(b)(6) Motion to Dismiss, Rec. Doc. No. 73, pp. 13–14 (Aug. 15, 2003).

the two companies. Dixie controls the truck drivers while performing a service to Cora–Texas. The payment system plaintiff relies on actually supports the Court's analysis. Cora–Texas never pays the drivers any compensation. Cora–Texas pays Dixie which in turn pays its drivers. Thus, the Court finds that Cora–Texas and Dixie are not a single enterprise under the *Radio Union/Trevino* rule.

### E. Conclusion

Plaintiff has stipulated that he failed to exhaust his administrative remedies under Title VII of the Civil Rights Act of 1964 with regard to Crown and Cora–Texas. Thus, those claims are dismissed. The Court also finds that plaintiff's allegations of racial discrimination are not legally cognizable under Title VII because plaintiff is an independent contractor, and has no employment relationship with Dixie, Crown, or Cora–Texas. Thus, all Title VII claims with regard to all defendants must be dismissed as a matter of law and by stipulation under the facts of this case.

Under *Johnson*, the filing and processing of plaintiff's E.E.O.C. charges under Title VII did not toll the running of the state prescriptive periods governing his § 1981 claim. The Court specifically finds that the continuing violation doctrine clearly does not apply under the facts of this case. The Court further finds that the relation back theory under Rule 15(c) of the Federal Rules of Civil Procedure does not apply as a matter of law to Title VII and § 1981 claims.

The Court also finds as a matter of law the term "enterprise" in the Fair Labor Standards Act of 1978 does not apply to make plaintiff an "employee" of Crown and Cora–Texas. However, the Court does conclude that the facts of this case must be analyzed under the *Radio Union/Trevino* factors. After applying these factors to the facts of this case, the Court finds that plaintiff was not an employee or contractor of Crown or Cora–Texas.

Therefore,

IT IS ORDERED that defendants' motion for summary judgment and to dismiss is granted.

IT IS FURTHER ORDERED that plaintiff's claim under 42 U.S.C. § 1981 is dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's claims under 42 U.S.C. § 2000e, et seq are dismissed pursuant to the stipulation of the parties.

Judgment shall be entered accordingly.